# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHWESTERN DIVISION

| | |
|---|---|
| LILLIAN BROOKE RAY<br><br>     **Plaintiff,**<br><br>  **v.**<br><br>**FRANK BISIGNANO ,**<br>**Acting Commissioner of Social Security**<br><br>     **Defendant.** | )<br>)<br>)<br>)<br>) Case No. **3:24-CV-05078-MDH**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER</u>

Before the Court is Plaintiff Lillian Ray's appeal of Defendant Social Security Administration Commissioner's ("Commissioner") denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff has exhausted her administrative remedies and the matter is now ripe for judicial review. After carefully reviewing the record, the Court **AFFIRMS** the ALJ decision.

## BACKGROUND

Plaintiff filed her application for a period of disability and disability insurance on June 14, 2019. (Doc. 4). Plaintiff was born on January 18, 1983, and alleged disability beginning on May 13, 2019. (Doc. 11-3). The ALJ found that Plaintiff had the following severe impairments: fibromyalgia, mild lumbar degenerative changes, lymphedema, neurocardiac syncope, and migraine. (Tr. 16). The ALJ additionally found that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 18). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to: lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; and stand

1

and walk in combination for approximately 6 hours total in an 8-hour workday with normal breaks. She is able to frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. She is able to perform work that requires work-related exposure to no more than moderate noise as defined by the DOT. She is able to work in environments that do not require workrelated exposure to direct sunlight or work under bright, focused lighting, such as found in an examination room. She is able to perform work that does not require rapid position changes. She is able to perform work that requires no more than occasional work-related exposure to extreme heat, such as experienced while working in close proximity to a lumber kiln. She is able to perform work that requires no more than occasional work-related exposure to hazards, such as unprotected heights and unguarded moving machinery. (Tr. 19). The ALJ found that the Plaintiff was unable to perform any past relevant work. (Tr. 22). Relying on the vocational expert testimony, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed, considering Plaintiff's age, education, work experience, and RFC. (Tr. 22). Consequently, the ALJ found Plaintiff not disabled. (Tr. 23).

**STANDARD**

The Court's role in reviewing an ALJ's decision is to determine whether the "findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042-43 (8th Cir. 2007), *citing Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir.1999). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Id*. "The fact that some evidence may support a conclusion opposite from that reached by the Commissioner does not alone permit our reversal of the Commissioner's decision." *Id*., *citing Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir.2004); *Travis v. Astrue*, 477

2

F.3d 1037, 1040 (8th Cir. 2007). If the record contains substantial evidence to support the Commissioner's decision, the Court may not reverse the decision simply because substantial evidence exists in the record that would have supported a contrary outcome. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). In other words, the Court cannot reverse simply because it would have decided the case differently. *Id*., *citing Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Further, the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

## DISCUSSION

Plaintiff argues three points on appeal. Plaintiff argues the ALJ failed (1) to address whether Ray's migraine symptoms equaled a listing-level impairment, (2) to account for migraine-related interruptions in productive activity, and (3) to identify any inconsistencies between Ray's reports concerning her migraines and the evidence. The Court will take each argument in turn.

I.     <u>Step Three</u>

Plaintiff argues the ALJ failed to undertake an analysis of Ray's migraine disorder at Step Three of the sequential evaluation process to determine if her migraine symptoms equaled Listing 11.02. The Government argues substantial evidence supports the ALJ's evaluation of Plaintiff's migraines throughout the sequential evaluation.

The ALJ found that Plaintiff had the following impairments: fibromyalgia, mild lumbar degenerative changes, lymphedema, neurocardiac syncope, and migraine. The ALJ stated that although the claimant has "severe" impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations, including 1.15, 1.16, and 11.02 (20 CFR

3

404, Subpart P, Appendix 1). (Tr. 18). Furthermore, no treating or examining physician has documented findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments

At step three, the ALJ specifically mentioned listing 11.02 when discussing whether Plaintiff had an impairment that met or medically equaled a listing (Tr. 18). The ALJ discussed that no treating or examining physician had documented findings equivalent in severity to the criteria of any listed impairment (*Id.*).

Additionally, earlier in the decision, the ALJ considered the evidence and concluded that Plaintiff did not have a marked limitation in any of the four "paragraph B" criteria found in 11.02(D)(2)-(5) (Tr. 17-18). In so finding, the ALJ mentioned that Plaintiff's mental status examinations revealed normal memory, normal concentration, and average intelligence (Tr. 17, (citing Tr. 1011, 1388, 1510, 1513); see also Tr. 1048, 1057, 1061, 1066, 1071, 1077, 1087, 1097, 1302, 1326, 1338, 1594, 1599, 1607). The ALJ also discussed that Plaintiff reported activities including performing personal care, caring for her children and her pets, preparing meals, doing chores, driving, going out alone, shopping, handling money, and reading the Bible (*Id.*, citing Tr. 644-654).

To the extent the ALJ did not address all of Plaintiff's complaints or each objective finding specifically, it is not error because an ALJ is "not required to analyze the relevance of each piece of evidence individually." *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("'[A]n ALJ is not required to discuss every piece of evidence submitted.'" (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998))); *Reeves v. Colvin*, 650 F. App'x 298 (8th Cir. 2016) (unpublished) ("[A]n ALJ's failure to cite certain evidence does not indicate that the evidence was not considered."

4

(citations omitted)). Instead, the regulations state that the decision must contain only the findings of fact and the reasons for the decision. See 20 C.F.R. §§ 404.953(a), 416.1453(a).

Furthermore, the ALJ's decision shows he considered Plaintiff's migraines throughout the sequential evaluation. The ALJ specifically indicated that he considered Plaintiff's migraines pursuant to SSR 19-4p (Tr. 19). The ALJ included a discussion of Plaintiff's allegations in her disability-related reports and her complaints to treating providers (Tr. 19, citing Tr. 621, 1062, 1510). He mentioned that MRIs of the brain in 2018 and 2023 were unremarkable except for cerebellar tonsillar ectopia (Tr. 19-20, citing Tr. 818, 1447-1448), which is consistent with a diagnosis of a primary headache disorder, such as migraines. *See* SSR 19-4p. However, the ALJ found it significant that, while Plaintiff had previously failed multiple migraine medications, she reported "pain relief for approximately 30 days" with Botox injections that she began receiving in mid-2023 (Tr. 19-20, citing Tr. 1510, 1512, 1619). In fact, as the ALJ noted, Plaintiff indicated that she was "pleased with her current headache relief" on her Botox regimen (Tr. 20, citing Tr. 1619). See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (An ALJ must consider the effectiveness of medications). "Since it is well established that 'impairments that are controllable or amenable to treatment do not support a finding of total disability,' the ALJ did not err in finding Plaintiff's headaches were less disabling than alleged." *Morin v. Saul*, No. 4:20-CV-00293-DGK, 2021 WL 1923366, at *3 (W.D. Mo. May 13, 2021) (citing *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

SSR 17-2p specifically states that, "[i]f an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does

5

not medically equal a listed impairment. Generally, a statement that the individuals impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." 2017 WL 3928306, at *4.

The Court's review of the record shows that the ALJ's analysis is supported at Step Three by the testimony and medical evidence. Plaintiff's argument that the ALJ failed to provide a substantive analysis at Step Three is not supported. The ALJ's determination is supported by substantial evidence in the record as a whole, and as such the Court **AFFIRMS** the determination at Step Three.

II.     Total Limiting Effects (Failure to Include Limitations)

Plaintiff argues the ALJ erred in failing to explain why the RFC did not include any provision for interruptions in productive activities (such as absences or unscheduled breaks) to account for Ray's migraines when they occur.

Plaintiff argues an ALJ is required to consider the "total limiting effects" of all a claimant's medical impairments in the RFC and the ALJ's failure to include migraine-related functional limitations violates 20 C.F.R. §§ 404.1545(e), 416.945(e) and SSR 96-8p.

Specifically, Plaintiff argues where an ALJ finds a medical impairment is "severe" at Step Two of a decision, it is reversible error to subsequently fail to include limitations in the RFC related to that impairment. *Bolek v. Saul*, 2020 WL 6484184, at *2 (W.D. Mo. Nov. 4, 2020) (remanding where the ALJ found a severe impairment related to a claimant's hand but failed to include limitations in the RFC related to use of the hands). In support, Plaintiff argues an RFC and the hypothetical questions which support them must consider "all" of a claimant's impairments and

6

"capture the concrete consequences of those impairments." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quoting *Roe v. Chater*, 92 F.3d 672, 676-677 (8th Cir. 1996)).

Plaintiff further argues that by their nature, migraine headaches interrupt normal productive activity. The Commissioner has described migraines as "vascular headaches involving throbbing and pulsating pain" that can be accompanied by nausea, vomiting, light sensitivity (photophobia), or sound sensitivity (phonophobia). SSR 19-4p, 2019 WL 4169635, at *3. Typically, migraines can last four hours or longer (including up to 72 hours in duration). SSR 19-4p, 2019 WL 416.9635, at *5.

In Plaintiff's case, medical records documented reports of migraine headaches lasting multiple days, up to "three days or more." (Tr. at 1059, 1356, 1450). Ray's neurologist, initially documented migraine frequency was "20+ days per month." (Tr. at 1059, 1356). Pain during migraine flares was described as "throbbing," "debilitating," and "severe." (Tr. at 1047, 1356). Accompanying symptoms included nausea, vomiting, general malaise, fatigue, and light sensitivity (photophobia). (Tr. at 1059, 1299, 1356). Ray's migraine symptoms were aggravated by stress, heat, lifting arms overhead, and physical movement. (Tr. at 1059, 1299). Even after Botox injection therapy, treatment records indicated residual migraine episodes 15 to 20 times each month with headaches starting from the time Ray woke in the morning and lasting until 3:00PM or 4:00PM. (Tr. at 1627).

In her case, Plaintiff believes that an RFC and the hypothetical questions which support that considers "all" of a claimant's impairments and "capture[s] the concrete consequences of those impairments" would include significant interruptions in normal productive activities on migraine day and thus the ALJ erred by not considering all limitations. Plaintiff concedes that the ALJ included limitations in the RFC related to aggravating factors that are typically associated with

migraine symptoms. However, Plaintiff argues these provisions of the RFC are not adequate to account for the primary functional limitation for Ray's migraines—namely, the interruption of normal productive activities and a need to isolate and lie down when migraines occur.

The ALJ's discussion throughout the sequential evaluation shows that he found that Plaintiff's migraines were not of the frequency or severity to be work preclusive. The ALJ accounted for Plaintiff's migraines by limiting her to light work with postural and environmental limitations (Tr. 20). More specifically, the ALJ limited Plaintiff to frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; work in environments with no more than moderate noise as defined by the DOT; work in environments that do not require exposure to direct sunlight or work under bright, focused lighting, such as found in an examination room; work that does not require rapid position changes; no more than occasional exposure to extreme heat, such as experienced while working in close proximity to a lumber kiln; and work that requires no more than occasional exposure to hazards, such as unprotected heights and unguarded moving machinery (Tr. 18-19).

When formulating the RFC, the ALJ also considered Plaintiff's activities of daily living during the period at issue, which he found demonstrated significant capacity despite her complaints of migraines (Tr. 20). The activities the ALJ considered included Plaintiff's ability to perform personal care, dress herself, care for her children and her pets, cook meals, do laundry, wipe her kitchen table, water flowers, drive, go out alone, shop in stores, read the Bible, and watch television (Tr. 20-21, citing Tr. 62-63, 644-654). *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (explaining that an ALJ must consider activities of daily living); SSR 16-3p; *see also Sutton v. Saul*, No. 6:20-CV-03026-DGK-SSA, 2020 WL 6887932, at *2 (W.D. Mo. Nov. 24, 2020) (finding

activities such as caring for a child, doing household and yard work, shopping, socializing, performing personal care, and handling financial matters inconsistent with disabling limitations).

The ALJ analyzed the persuasiveness of the prior administrative medical findings of the State agency medical consultants, who found that Plaintiff could perform a range of medium work, and concluded that the evidence supported greater exertional, postural, and environmental limitations (Tr. 21, citing Tr. 169-188, 191-214). The ALJ also considered the May 2023 opinion of Patricia Sullivan, a nurse practitioner, who found limitations consistent with an inability to sustain work activity on a regular and continuing basis (Tr. 21, citing Tr. 1518-1520). The ALJ found Ms. Sullivan's opinion unpersuasive, in part, because it appeared to be based on Plaintiff's subjective complaints during the appointment the day the form was completed (Tr. 21). The ALJ found that it was also inconsistent with Plaintiff's mostly conservative care (except for Botox injections), her typically benign examination findings, and her activities of daily living (Tr. 21, citing Tr. 644-654, 1592). Significantly, Ms. Sullivan attributed the most significant limitations to "orthostatic dysregulation" and mast cell "flares" rather than to migraines (Tr. 1519-1520). Further, there are no medical opinions or prior administrative medical findings in the record indicating that she had any migraine-related work limitations that the ALJ found persuasive.  Thus, Defendant argues she has not shown that additional limitations were warranted. Further, Defendant argues contrary to Plaintiff's assertion, the ALJ considered evidence that was inconsistent with Plaintiff's allegation that she would have "interruptions in productivity" in addition to typical workday breaks that needed to be accounted for in the RFC. *See Jones v. Astrue*, 619 F.3d 963, 970-971 (8th Cir. 2010) (ALJ's narrative explanation elsewhere in decision may illuminate other findings).

SSR 96-8p requires the ALJ to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. If the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p.

By discussing Plaintiff's objective findings, her reports to treating providers, the efficacy of her treatment regimen, her activities of daily living, the prior administrative medical findings of the State agency medical consultants, and the medical opinion in the context of Plaintiff's allegations related to her migraines, the ALJ built a link between the evidence and his conclusions. Thus, the Court finds that the ALJ did not violate 20 C.F.R. §§ 404.1545(e), 416.945(e) and SSR 96-8p as Plaintiff alleges. The Court hereby **AFFIRMS** the ALJ's determination of Plaintiff's RFC.

III.     Reasons (or lack thereof) to Discount Alleged Limitations

Plaintiff argues the ALJ failed to identify genuine inconsistencies between the record as a whole and Ray's testimony regarding the specific frequency, duration, and severity of her migraine symptoms.

Ray testified that even with improvement from Botox therapy, she continued to experience lesser headaches on a daily basis and migraine-level headaches 15 to 20 days every month. (Tr. at 57). She noted suffering pain in her neck as well during migraines. *Id*. Ray explained that a typical migraine episode could last a full day or longer. (Tr. at 58). She described a throbbing pain that interrupted normal activities and required her to "lay down flat" in a "dark room" until her symptoms resolved. *Id*. Ray's medical records documented a similar pattern of ongoing symptoms despite treatment. (Tr. at 1059-1063, 1626-1633). As also noted above, the VE who testified at Ray's hearing indicated off task periods more than 10-15 percent of a workday, absenteeism of

even two times per month, or any absenteeism during the typical 90- day probationary period at the beginning of employment would not be tolerated by a competitive employer. (Tr. at 70). If credited, Ray's allegations regarding her migraine symptoms would preclude any competitive work and support a conclusion that she is disabled.

Defendant argues that by discussing Plaintiff's objective findings, her reports to treating providers, the efficacy of her treatment regimen, her activities of daily living, the prior administrative medical findings of the State agency medical consultants, and the medical opinion in the context of Plaintiff's allegations related to her migraines, the ALJ built a link between the evidence and his conclusions.

Under the substantial evidence standard, a showing that some evidence could feasibly support an alternate conclusion is not enough. Rather, a plaintiff must show that the Commissioner's own finding is not supported by substantial evidence. As this Court has stated, "the mere existence of countervailing evidence is not enough to disturb an ALJ's conclusion." *Cohen v. Kijakazi*, No. 20-04230-CV-C-BP-SSA, 2022 WL 357504, at *2 (W.D. Mo. Feb. 7, 2022) (citations omitted). *See also Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024) ("Although the evidence may support a finding that Ross's back [and head/neck] injuries preclude him from working in the national economy, the evidence also supports the ALJ's contrary finding. Because the evidence supports two inconsistent conclusions, and both conclusions are in the zone of choice, we cannot reverse the ALJ's determination."); *Dols v. Saul*, 931 F.3d 741, 748 (8th Cir. 2019) ("But we consider only whether the ALJ's decision is supported by substantial evidence, not whether we would have made the same decision." (citation omitted)).

Although Plaintiff points to other evidence that could support a more restrictive assessment, the Court's role is not to reweigh the evidence. Under the substantial evidence

11

standard, the question is whether a reasonable mind could find the ALJ's conclusions supported by the record. Here, the ALJ provided a clear and logical explanation for his evaluation of Plaintiff's migraine allegations, and that explanation is supported by substantial evidence in the record as a whole.

## CONCLUSION

The Court finds the Commissioner's decision is supported by substantial evidence in the record as a whole. Therefore, the Commissioner's denial of benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Date:  March 24, 2026

    */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

12